# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

**GRUBSTAKE INV. ASS'N et al. v. SOUTHERN NATURAL GAS CO.**

Circuit Court of Appeals, Fifth Circuit.
June 13, 1927.

Rehearing Denied Aug. 2, 1927.

No. 4840.

**1. Gas ⬪⟾13(1)—Pipe line company held required to take gas at stipulated pressure at field, though not producing contemplated pressure at city.**

Though, when pipe line company contracted with owner of natural gas field for gas, the parties had in contemplation the pressure which would be required at the city to which the gas was to be piped, the company was bound to take gas at the expressly stipulated pressure at the wells.

**2. Gas ⬪⟾13(1)—Gas field owner held not entitled to take possession of wells, on pipe line company refusing to resort to artificial pressure.**

Under contract of owner of natural gas field with pipe line company that, when sufficient gas to meet company's requirement cannot be delivered at specified natural pressure, and company does not elect to subject it to artificial pressure, company may get gas elsewhere, in which event field owner may take possession of the gas from his wells, unless the company agrees to take all that he can furnish at prevailing pressure of wells, *held*, that the company, on such a failure of gas, refusing to use artificial pressure, but agreeing to take such gas as could be delivered in the pipe line against the prevailing pressure, the field owner has no right to take possession of the wells, but only to take such gas as cannot get into the pipe lines under natural pressure.

**3. Gas ⬪⟾13(1)—Gas contract held to contemplate payment for certain minimum number of feet per day only when it was available.**

Under contract of owner of natural gas held for furnishing gas to pipe line company, construed as a whole, provision for paying for minimum of 3,000,000 cubic feet per day, *held* to contemplate payment for that amount only when it was available.

20 F.(2d)—1

**4. Gas ⬪⟾13(1)—Requirement of natural gas contract for minimum payment held not affected by supplemental contract allowing certain amount to be obtained elsewhere.**

The requirement of a contract for owner of natural gas field supplying gas to pipe line company that the company shall pay for a minimum of 3,000,000 feet per day *held* not affected by supplemental contract making no reference to such minimum requirement, but merely authorizing the company, irrespective of such owner's ability to furnish required amount, to take 1,000,000 feet per day from other sources, and expressly stating that the original contract is modified only in the respects specified.

**5. Gas ⬪⟾13(1)—Though gas was not produced by well drilled by pipe line company, under contract, cost was chargeable to owner of field.**

Pipe line company having strictly complied with provision of its contract with owner of natural gas field, authorizing it to drill wells thereon at his expense, the cost is chargeable to him, though gas was not produced from such wells; it not having drilled where there was any reason to believe that drilling would be useless.

**6. Gas ⬪⟾13(1)—Advances by pipe line company to owner of gas field could be deducted from monthly settlement on account of gas from any source.**

Under contract of pipe line company with owner of natural gas field providing for its paying him a certain price for gas therefrom, and for paying him a certain amount on account of gas, which it should obtain from another source, deduction for advances for work made by it to him, which deduction the contract provided could be made out of monthly settlements for gas, could be made out of settlement, not merely for gas from the field, but out of settlement with him on account of gas bought from another from the other source.

**7. Appeal and error ⬪⟾882(19)—Order for specific performance may not be complained of by party praying therefor.**

Defendants are not entitled to complain of the order for specific performance of contract, they, as well as plaintiff, having prayed therefor.

**8. Costs** ⊜234 —**Corrections on appeal being only conditionally important, all costs of appeal will be charged to appellants.**

As the particulars in which the decree has been corrected relate to matters which cannot be important, unless such gas wells as are required by the contract involved have been developed since the decree or may hereafter be developed on the land involved, costs of appeal will be taxed against appellants.

Appeal from the District Court of the United States for the Western District of Texas; Duval West, Judge.

Suit by the Southern Natural Gas Company against the Grubstake Investment Association and others. From a decree for plaintiff, defendants appeal. Affirmed in part, and in part reversed, and cause remanded.

Frank R. Williams, of San Antonio, Tex. (Eskridge & Williams, of San Antonio, Tex., on the brief), for appellants.

R. J. Boyle and W. F. Ezell, both of San Antonio, Tex. (Boyle, Ezell & Grover, of San Antonio, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a suit in equity to enforce rights under an original and supplementary contract for the supply of natural gas. Both sides, appellee in the bill, and appellants in their answer, prayed for specific performance of the contract and for an accounting. In addition, the bill sought an injunction, which was granted, against interference by appellants with appellee's rights to drill gas wells upon the land described in the original contract.

On October 13, 1921, appellants, being the owners of oil and gas leases covering 50,000 acres of land upon which natural gas had been developed, located an average distance of about 65 miles from San Antonio, Tex., entered into a contract with one W. M. Sweetman, under the terms of which they conveyed to him all their interest and estate in gas in wells then upon said property, and in wells that might thereafter be drilled thereon, subject to the faithful performance by him, or his assigns, of certain obligations, including the construction within 18 months of a 12-inch pipe line from the gas field to San Antonio; the taking of all gas which could be disposed of in San Antonio; and the payment of five cents per 1,000 cubic feet for all gas so taken. Sweetman agreed to advance appellants $2,000 per month until the completion of the pipe line, to be expended in drilling additional gas wells, and to be deducted at the same rate out of monthly settlements for gas after the completion of the pipe line. Section 10 of the contract reads as follows:

"First parties [appellants] agree that when a sufficient volume of gas to meet the requirement of second party [Sweetman] cannot be delivered at the meter or meters stationed at the gas well or wells at natural pressure of one hundred fifty (150) pounds per square inch, when connected to second party's pipe lines, and second party does not thereupon elect to subject said gas to artificial pressure, second party shall thereupon have the right to resort to other gas than that purchased hereby or hereafter included herein, in which event, however, first parties shall have the right to take possession of such gas and dispose of it in such manner as they may see fit, unless second party in such contingency shall agree to take all of the gas which first party can furnish at prevailing pressure of wells although it be less than full requirements of said second party."

Sweetman further agreed "to pay for a minimum of 3,000,000 cubic feet of gas per day at 5 cents per 1,000 cubic feet, beginning upon completion of the line to the city of San Antonio, regardless of a less amount of gas actually taken therefrom, payments to be made monthly as above provided." Appellants, on their part, agreed to use reasonable diligence in the drilling of additional gas wells in an effort to maintain a reserve of 80 per cent. in excess of the requirements of Sweetman, the party of the second part, and, in the event such a reserve should not be maintained by them, that the party of the second part should have the right, after notice, to obtain any deficiency from third parties, and also to drill the necessary wells on the land described in the original contract, charging the reasonable cost thereof to appellants, provided it had not theretofore been reasonably demonstrated that further drilling would be useless.

The contract was to continue for ten years upon completion of the pipe line, "and for as long as first party can deliver the gas as above mentioned." On May 3, 1922, Sweetman and his associates entered into a contract with the San Antonio Public Service Company, which had a franchise from the city of San Antonio to supply that city and its inhabitants with gas, under the terms of which contract they agreed to supply as much gas as the public service company should sell and desire to use as fuel in its power plant, the gas to be delivered in pipe lines at the city gates at a pressure of not less than 45 nor more than 55 pounds above atmosphere. On August 26, 1922, appellants and Sweetman entered into

a supplementary contract, by which they modified the original contract "to the extent that the second party hereto [Sweetman], his heirs, or assigns, shall be authorized to acquire, without reference to the ability of the first parties hereto [appellants] to furnish the requirements of the second party as in their aforesaid contract [of October 13, 1921] specified, the maximum of 365,000,000 cubic feet of natural gas per annum (to be taken annually) from the properties situated in Bexar county, Texas, known as the 'Gas Ridge,' as provided in contract of even date herewith," with the Gas Ridge Development Company and others; "it being understood that the aforesaid contract between the parties hereto, of date October 13, 1921, is hereby modified only in the respects herein specifically provided and in no other respect."

As consideration for that contract, appellants were to receive one cent per 1,000 cubic feet for natural gas which should be taken from the Gas Ridge field. Sweetman and his associates assigned the original and supplemental contracts to appellee, the Southern Natural Gas Company.

Before the original contract was entered into, appellants had developed three gas wells, and believed that a practically inexhaustible supply of gas could be developed on their land. San Antonio was the nearest and only available market for gas, but there was no pipe line leading from the land of appellants to it. At the time the original contract was made, the parties to it understood, not only that Sweetman would construct the necessary pipe line, but also that he would undertake to enter into a contract with the San Antonio Public Service Company which would contain in substance the provisions that were in fact subsequently made as to quantity and pressure at San Antonio.

Appellee constructed the pipe line within the time agreed upon at a cost of approximately $1,000,000, and advanced $28,000 to appellants at the rate of $2,000 per month. In December of 1921, or January of 1922, appellants brought in another gas well, making four in all. When the supplementary contract was entered into on August 26, 1922, appellants still believed that the wells on their land were capable of producing gas far in excess of appellee's requirements. The pipe line was completed and gas turned into it in November of 1922, and until January of 1923, the wells of appellants delivered, under natural pressure, gas in sufficient quantity, and with sufficient pressure at the point of delivery, to supply all the requirements of appellee and of the Public Service Company. But after that period the supply gradually diminished until September of 1923, when the wells of appellants ceased to put any gas into the pipe line. The requirements of the Public Service Company were a daily average of 7,-000,000 cubic feet of gas. A pressure at the wells of 125 pounds would deliver that quantity of gas at San Antonio at a pressure of 45 pounds above atmosphere. A pressure at the wells of 150 pounds would deliver 8,500,000 cubic feet at San Antonio at a pressure of 50 pounds above atmosphere. Appellee paid for all gas which it received, but, after the failure of appellants' wells, refused to make any further payments, although the wells in the Gas Ridge field have since continued to supply gas. In March of 1923 appellants wrote to appellee that they were unable to furnish a sufficient volume at a natural pressure of 150 pounds to meet its requirements, and called upon appellee to decide whether it would subject the gas to artificial pressure or take it at the prevailing pressure.

Appellee replied that it was not its purpose to subject the gas to artificial pressure, but that it would take all the gas that the wells of appellants were capable of putting into the pipe line at the prevailing pressure. Appellee called on appellants to drill additional wells, but they failed to do so. Thereafter appellee drilled three additional wells on the land described in the original contract, but none of them were producing wells; however, they were drilled in a locality where it had not been demonstrated that further drilling would be useless. The cost of drilling these wells amounted to $13,941.71. Appellee received back from appellants in monthly deductions $19,375.38 of the $28,000 advanced while the pipe line was being built, leaving a balance in its favor of $8,624.62 on account of such advancements.

The decree adjudges that on October 13, 1921, when the original contract was entered into, the parties to it had in contemplation the nature of the requirements that would be made as to the pressure of gas in the pipe lines at San Antonio, and understood that to comply with such requirements a pressure ranging from 45 to 55 pounds above atmosphere at point of delivery would be necessary. Accordingly, it was decreed that appellee is only required to take such gas from appellants as their wells are capable of delivering into the pipe line with a natural pressure of from 45 to 55 pounds above atmosphere at the city gates of San Antonio. It was further adjudged that appellee was not bound by the original contract to pay for the minimum of 3,000,000 cubic feet of gas per day, unless that

much actually came into its pipe lines against the pressure prevailing therein, but that even then the minimum to be paid for had been reduced by the supplementary contract from 3,000,000 to 2,000,000 cubic feet per day. Counterclaims of appellants for an accounting for the minimum of gas deliverable under the original contract, and for gas taken from the Gas Ridge fields after the wells on the land described in the original contract failed to supply gas, were rejected.

Judgment was entered for appellee, without any deduction on account of the counterclaims of appellants, for $13,941.71, representing its expenditures in drilling wells upon land included within the original contract, and for $8,624.62 on account of unrepaid advancements made by appellee during the construction of the pipe line, this last stated amount, however, not to be paid in cash, but to be deducted out of any payments for gas that might then be due or that might become due in the future. The decree also enjoins appellants from preventing or interfering with the drilling by appellee of wells upon the land described in the original contract for the purpose of meeting its requirements for gas, and also, in general language, ordered specific performance of the original contract, as modified by the supplementary contract. Appellants do not complain of the issuance of the injunction, but assign error on all the other abovementioned features of the decree.

[1] It is clearly established by the evidence, and admitted in an agreed statement of facts, that the parties entered into their original contract in contemplation of the pressure that would be required at San Antonio. Nevertheless the contract speaks of the pressure that would be required in the pipe line at the gas field. Under section 10 of the contract appellee would be required to take such gas as the wells of appellants would supply in sufficient volume at a natural pressure of 150 pounds. Although the parties to that contract had in mind the pressure that would be required at the point of delivery, it is manifest that they intended to state in definite and certain terms the pressure required in the pipe line at the gas field, and to make that pressure sufficient to create the estimated pressure required at San Antonio. The evidence shows that, if the pressure required by the contract at the wells had been maintained, there would have been the pressure at San Antonio that was contemplated by the parties. Appellee was not bound to subject the gas to artificial pressure, and it elected not to do so; but it agreed to take such gas as could be delivered in the pipe line against the prevailing pressure, although the supply thus received would be less than its full requirement. We are of opinion, therefore, that appellee would be required to take such gas as appellants could furnish at the prevailing pressure in the pipe line from wells that were in existence at the time it made its election. It may be that a decision of this question is unimportant, in view of the fact that existing wells of appellants are unable to supply any gas. But the question may become important in the event wells should in the future be developed upon the land in question.

[2-4] We do not agree to the contention of appellants that they have the right to take possession of the gas wells upon appellee's refusal or failure to resort to artificial pressure. Undoubtedly appellants have the right to take such gas as cannot get into the pipe line under natural pressure, but appellee has the right to take such of the gas as can enter against the prevailing pressure in the pipe line. As appellants have been unable or unwilling to furnish any gas, appellee is relieved of the obligation to pay for the minimum of 3,000,000 cubic feet per day. The contract is to be construed as a whole, and it was not contemplated by it that appellee would be required to pay for that minimum when no gas was being furnished, but only that appellee should pay for that much if it was available, whether it was used or not. If by the development of other wells, appellants become able to meet appellee's requirments, in our opinion the latter is bound by the contract to pay for a minimum of 3,000,000 cubic feet per day. The supplementary contract does not in terms purport to reduce the minimum to 2,-000,000 cubic feet. It only authorizes the taking of 1,000,000 cubic feet from the Gas Ridge field, makes no reference to the minimum requirement under the original contract, and expressly provides that the original contract shall not be modified, except in the particular matter of authorizing appellants to acquire additional gas. A further modification will not be implied where, if intended, it could easily have been expressed and was not. Inasmuch as appellants have been paid for all the gas they have furnished, they are not entitled, upon the evidence adduced, to recover anything on their counterclaims.

[5-7] Appellee strictly complied with the provisions of the contract authorizing it to drill wells at the expense of appellants, and although gas was not produced from the wells it drilled, the cost is chargeable against appellants, since it did not drill on land where there was any reason to believe that drilling would be useless. It is not disputed that appellee

was entitled to a judgment for the balance due on advances it had made, but only that deduction should not be made out of any future payments for gas produced in the Gas Ridge field under the supplementary contract. It is said in argument that deduction could only be made out of payments for gas taken from the land of appellants. The contract authorized the deductions to be made out of any monthly settlement. The judgment on account of unrepaid advancements was therefore correct. Appellants are not entitled to complain of the order for specific performance of the contract, in view of the fact that they prayed for such an order.

Our conclusions are that it was error to decree the degree of pressure required at San Antonio, rather than in the pipe line at the gas field; that it was likewise error to decree that the supplementary contract had the effect of reducing the minimum prescribed by section 18 of the original contract from 3,-000,000 to 2,000,000 cubic feet of gas per day, and that in all other respects the decree should be affirmed. We think it best to send the decree back for revision by the district court, so that it can be submitted to counsel on both sides before it is finally entered; any decree entered to give effect to the contract as herein construed.

[8] As the particulars in which the decree is corrected relate to matters that cannot be of importance, unless such gas wells as are required by the original contract have been developed since the decree, or may hereafter be developed, on the land involved, the costs of this appeal will be taxed against appellants.

The decree is affirmed in part, and reversed in part, and the cause remanded for further proceedings, not inconsistent with this opinion.